On the case 14-1362 Mark Judge v. Landscape Forms Incorporated Oral argument not to exceed 15 minutes per side Mr. Piper for the appellant May it please the court, William Piper appearing on behalf of the plaintiff appellant Mark Judge In this case the district court said that Mr. Judge on his ADA accommodation claim Had not requested accommodation And of course the Sears case and the applicable regulations indicate That a leave of absence under appropriate circumstances can be a reasonable accommodation When did you request or your client request an accommodation? And what was the communication that requested it? Yeah, and I was going to get into that. The accommodation requested was just I want to leave. I mean there was first of course the family medical leave that was requested in early May And I acknowledge that expired in early April But there was also a short-term disability that was requested And most importantly the long-term disability was requested and actually granted on August 4 of 2011 There was a letter from the third party I'm a little confused and I may not have asked the question right What date and what communication is your position Requested a reasonable accommodation to be made by the employer? Okay, there's a little bit of a disconnect because I think what the court ultimately ruled Was that Mr. Judge did not give a date certain for his leave of absence I'm just asking you what your position is? Okay, my position is that the long-term disability that was requested and granted on August 4 of 2011 And the disability carrier wrote that the defendant retained to handle this for it It's an agent, wrote a letter to Ms. Phillips for the defendant Indicating that it had approved the disability on August 4 of 2011 At that point my client believed that he was on the long-term disability And that was the accommodation that he was given As I indicated I think what the court ultimately ruled on Is that somehow my client was required to give some sort of a date certain As to when he would be able to return Not that the accommodation wasn't already there Which was the leave of absence So there was a letter from your client requesting or a statement in writing somewhere Requesting long-term disability leave? Yes, he had filled out the forms, Your Honor And when did he fill out the forms? Exhibits 9, 10, and 11 that were attached to my brief In opposition to the motion for summary judgment Were the documents regarding the long-term disability that was requested Exhibit 11, which I believe is page ID number 456 in the record Was the actual approval that was given by the third-party company That the defendant retained to handle the FMLA And the long-term disability and short-term disability issues It sent the letter to Ms. Phillips for the defendant on August 11 Approving Mr. Judge's request for the long-term disability So that is all there Mr. Judge was on long-term disability at the time all of this stuff happened At the time he was terminated And I think really what the court indicated When it said that Mr. Judge had not requested accommodation Not that he didn't request accommodation All that's in the record, it's clear in the record If the court actually hung its head on that It would clearly be error Because he had requested the leave of absence An indefinite period apparently Well, until the leave of absence term would run out And I can't tell you when that would be But yes, it would be until the policy period would run out How long was the policy period? Unfortunately, I can't tell you off the top of my head what that was It's just that he was on the leave of absence And then the court really ruled that Mr. Judge had not requested a date certain But that's where I think we get to the key issue in this case Which is the regulations require with respect to request for accommodation That there be this informal, flexible, interactive process And the defendant never told Mr. Judge during this whole process We need a date certain for your return to work They didn't say we need a date certain They didn't say if you don't give us a date certain you will be terminated There were communications where Mr. Judge And you have to understand this is not cancer or heart disease or whatever Where it's likely going to be an indeterminate period of time Mr. Judge had a bicep tear And presumably, logically, people have enough common sense to know That bicep tears heal and that people will be good to go Unless some setback occurs So what happened in this case is in August Mr. Judge's doctor indicated he could return to work But no use of his right arm The defendant said that's not acceptable There was further communication by Mr. Judge Saying he's doing physical therapy, he's doing well, he's getting stronger  There was a call made to Mr. Judge requesting not a date certain But what are your current restrictions? And Mr. Judge responded to that question with the current restrictions That the doctor had given him based on the September 15th What were those, do you remember? Yes, the restrictions were 20 pound lifting So they were improved over the previous from August Still couldn't work, still couldn't return to his job Unless they had accommodated him But it was a 20 pound lifting restriction No use of a screwdriver And no repetitive bending, twisting, things like that Which you see often in a doctor's order So he's doing physical therapy, he's improving From an employer's perspective, why wouldn't they view the restrictions As the restricted work, as the request for accommodation As opposed to just an indefinite time off until it heals? Well, I believe they should have And I believe on September 26th when they received that information They should have engaged in the informal, flexible, interactive process To make a determination as to whether they could accommodate those restrictions I don't believe any of that Well, they did decide they could not accommodate those restrictions Well, they decided awfully quickly Because as they called him back on that day Indicating that because we have to meet staffing levels And because you haven't given us a date certain We're letting you go And that blindsided Mr. Judge at that point Because as I indicated, no one indicated he had to give them a date certain And I believe that violated the duty of this flexible, interactive process Because if he's improving, he's got a bicep tear It's not something that's likely to go on forever And they fire him for not giving him a date certain When they never told him he had to give them a date certain And I believe that violates the duty of accommodation And the duty to engage in this informal, flexible, interactive process The court basically hung its hat on that No definite leave, no definite return date was indicated When the defendant never asked him for that Isn't it fair to say that it was preceded, though, by a number of communications That suggested he was going to be ready earlier and then wasn't? Drop out of communication, largely? I believe initially there was, very initially in the case Right when Mr. Judge had his surgery or right around that time His doctor had indicated 4 to 6 months for recovery And he communicated that to the defendant So why isn't that his request for a reasonable accommodation? Well, as I argued in my brief, I believe that gave the defendant Some general idea of how long it would be for him to recover In the meantime, he's telling the defendant I'm improving, I'm doing physical therapy Obviously the restrictions are being lessened as time goes on And then we get to the September 26th phone call Where he's told, we're letting you go because you haven't given us a date certain And then Mr. Judge, of course, says, and I believe that again It's supposed to be flexible, interactive He told them at that time, because he was being told You're being let go for not giving us a date certain Well, you know, I went to my doctor and he said You know, I could probably return by mid-November In that conversation, that's all one conversation And was it correct that Mr. Judge made that comment After being told he was being fired? Yes, but I believe under these circumstances I mean, you can't divorce it from the entire process that occurred beforehand You know, again, he's never told he has to give a date certain And I believe he arguably did give a generalized date certain But he never told that Then when she says you're being let go for that He says, well, you know, I was I will probably be able to return in mid-November And under those circumstances I don't believe the defendant should so rigidly apply this date certain issue When they haven't even written him the letter to terminate him That letter didn't come until two days later But I think the big thing is He was never told that he had to give a date certain So all of this is coming I mean, just, you'd have to think If you're employed and your employer continually calls They're eager for you to come back There needs to be an end date, doesn't there? Or you could come back doing a different job But there needs, I mean, you don't actually argue that one has to be told that Well, I think reasonably if you're going to be fired For not giving a specific end date You should be told that I think the reciprocal is employers expect employees to work Yes, and I believe There's a time frame where they can tolerate absence And there probably comes an end point of that And that's not something that has to be shouted from the rooftops Everybody pretty much knows that, do they not? Well, I don't think that everyone knows that they have to give a specific end date He was giving the defendant information all along about his recovery And things of that nature You're right And I don't want to leave before going to what I believe is to the next issue Which is the issue of undue hardship The defendant, you know, this isn't like the McDonnell-Dovell burden-shifting thing Where they merely have to articulate a reason The burden of proof is actually on the defendant To show there was an undue hardship That the accommodation would have been an undue hardship And which is defined as significant difficulty or offense They merely asserted that we need to fulfill staffing levels There was no proof offered to that effect Or proof as to how difficult it would be or how expensive it would be And under those circumstances I don't believe they met their burden of showing that Giving him a further leave would have been an undue hardship Did the district court address that issue? The district court did not address that issue Again, the district court addressed the issue of pretext Which I believe was an incorrect analysis under the circumstances It should have been an analysis of Once you get to their asserted reason It should have been, does that constitute You know, are they describing what would be an undue hardship So I think they So is pretext a factor in one of these types of cases? I don't believe it would be under a failure to accommodate claim But was that talked about in terms of the FMLA claim? Wasn't that where it came in? Yes, I believe it was And I'm sorry I didn't get to the FMLA claim But I believe it was But that's also a question too Because the FMLA under the regulation Saying that we incorporate whatever The greater leave would be available Under the FMLA or the ADA And if you adopt the ADA standards for leave Under those circumstances You're kind of adopting the ADA standards So question as to whether pretext should have been Analyzed in that fashion But clearly it should not have been an analysis Under the ADA claim It should have been an analysis of undue hardship And the court didn't address it at all And there was no evidence That it would have been an undue hardship Your red light, I'm afraid, has been on May it please the court My name is Craig Lubin I represent Landscape Forms It's our position that the district court Rule correctly and the decision should be affirmed Let me go directly to the issue of reasonable accommodation On count one Because we completely agree That there's supposed to be an interactive process Between the employer and the employee But to have an interactive process The employee has to respond And that was the problem here The lack of communication With the initial leave it was very clear It was an FMLA leave All the proper paperwork was processed A doctor's certificate was obtained And the doctor said that the leave would last Until from May 18 of 2011 Until August 10 of 2011 Roughly the 12 weeks required by family medical leave During that period Ms. Phillips from Landscape Forms Attempted to keep contact with Mr. Judge Just to find out how he was doing And how he was progressing with his injury So they talked on May 27 of 2011 He said he was going to have a recheck on June 2 And he would call He didn't call So on June 6 she called him And asked him what was going on He told her he was going to have a recheck on July 7 And he would call At these points he's receiving short-term disability, right? Correct, yes And I'll come to that in just a minute But the disability is different than the leave The disability is simply about the benefit you get The pay you receive This is about administering how much time you get to be off And I'll refer to one of his exhibits in a minute That I think affirms that But you only get disability payments If you're not working, right? That is correct That is correct So he's supposed to call after July 7 He doesn't So on July 26 Ms. Phillips calls a long-term disability carrier And learns that they are processing A long-term disability claim for him Now, I want to respond to this Because when you asked the question Well, what was his request for accommodation The answer was Well, he was given long-term disability leave And Mr. Piper referred to tab 11 of his brief That's docket number 44-3 It's page number 456 That is a letter to Ms. Phillips at Landscape Forms From the LTD carrier And what it says is Mr. Judge has been given long-term disability It's been approved beginning July 28 A detailed letter has been sent to Mr. Judge Explaining how the benefits are administered Due to the confidential nature of the approval documentation We are unable to provide you With a copy of the actual letter sent Please notify us immediately Should the employee return to work What's my point? My point is this simply reaffirms That all disability carriers doing Is administering the benefit He's not administering the time off That's being done by Ms. Phillips Is there knowledge on the part of the company As to how long long-term disability payments can last Some companies for instance It's only two years or something like that Is there a limit here? Your Honor, I'm sure there is But I honestly don't know what it is But let me come back to August 9 of 2011 Because you recall that was the end Of the initial 12-week leave The family medical leave That had been certified by the physician On that day, Ms. Phillips contacts Mr. Judge And what she learns is He still can't use his right arm He needs six more weeks of physical therapy He says he will be rechecked around September 16 of 2011 This is important because this is the way The interactive process is supposed to work And she said great And this was August what? This was August 9 of 2011 She said great, we'll give you the six more weeks Contact me after September 16 Which is when your follow-up appointment is After the six weeks And let me know how you're doing He doesn't So we get to September 26 Ten days after his supposed recheck She calls him and leaves a voicemail And says I want to know how you're doing What happened? Give me a call He doesn't call He doesn't write Instead he facts in a doctor's slip And that doctor's slip is in the record It's docket number 32-3 Page 5 of 17 Or I think it's page ID 156 If you look at that It's a September 23, 2011 doctor's slip All it says is He has continuing restrictions He can't lift over 20 pounds He can't use a manual screwdriver He can't do repetitive lifting, pulling Or pushing at his right elbow It doesn't say he's continuing with therapy It doesn't say that it's anticipated It's going to get better He doesn't accompany it with a list That says anything like that That's all that he has provided In response to her phone call Asking for information on his update So what does she do? She does exactly what the employer is supposed to do First she goes to his supervisor Mr. Kalkowski And says Do we have any Essentially work Where you can't use your right arm You can't do screwdriver work Important to note He works in the wood shop At Landscape Forms Which basically makes Chairs, tables, etc You're screwing You're sawing You're doing all sorts of things Is the key part And he admitted at his deposition He could not do his job In a one-handed way Mr. Kalkowski concludes the same thing Then she says Do we have any other open positions? Because he points out On one occasion When somebody was injured Turns out the receptionist Was on maternity leave So they let the person answer the phones They didn't have any open positions So she informs him At that point in time That there's an administrative termination And she sends him a letter Telling him it's an administrative termination And that phrase Was the termination done by phone Or by letter Or how? The termination Both The termination was in writing And there's a letter of termination That was provided That's docket number 32-3 Page 7 of 17 Or page ID number 158 That's the letter that she sent And he acknowledged that he received And that was sent What day? It's dated September 28, 2011 So one time When your opponent urges That there was a request For a reasonable accommodation Was in some telephone call I thought that was on the 26th Here, yeah Here is where The testimony gets muddled But I'm going to give it to you In the way that Mr. Judge describes it Because I assume that's the way We have to look at it For summary judgment He contends that on September 26 Ms. Phillips called him And said We can't accommodate your accommodation That you just faxed in And therefore You are being administratively terminated That part everybody agrees on The termination had already occurred At that point in time Wait a minute You didn't tell us that When you were giving us the scenario You said that there was a voicemail I thought From Ms. Phillips  The plaintiff sent in this doctor's form Which you were critiquing Correct But then there was a call Subsequent to the doctor's form being faxed That's correct Okay, and that was on the 26th That's according to Mr. Judge It was on the 26th Okay And Mr. Judge says that Phillips said You're being administratively terminated And then Mr. Judge's lawyer was telling us That then Mr. Judge said Hey, I can come back on November something Well And you're disputing that As a factual matter happened Is that what you're saying? It didn't happen Because you've been carefully saying That's what Mr. Judge says Well, what I'm saying is Our client has no Ms. Phillips has a recollection of a phone call Where she informed Mr. Judge That he was being administratively terminated He became very angry There was loud noise in the background He says his girlfriend was there And that she was upset as well She doesn't Ms. Phillips does not have any recollection Of him saying anything about Follow-up appointment Or I'm going to be free on November 15th Or anything like that She just recalls informing him Of the administrative termination And the loud noise in the background And that was on the 26th Her recollection was That it was on the 28th When she sent the letter out His testimony was He thought it was two days Before he got the letter Okay, so And we do take every disputed fact in the light Most favorable to the plaintiff here But Phillips agrees That there was a phone call that she made That she, Phillips made To the plaintiff Where she, Phillips Orally announced the termination Yes, and he agrees with that And the only question That I can hear Is the date question Whether that was the same day As the written termination letter was dated Or whether it was beforehand Yeah, two areas of dispute One is the date Whether it was the 26th or the 28th The second is Did he in fact go on to say And oh, by the way I'm going to have a follow-up appointment With my doctor on November 15th And I hope to be released at that point in time One question that I had Which I asked your opponent Is why isn't the initial statement That he made early on That he would need four to six months To recover from the problem The shoulder problem Why isn't that a request For reasonable accommodation? The reason that it's not A request for accommodation Is that initial request for leave Was not four to six months There was no communication like that Rather, what they did was to say Let's submit the FMLA documentation Which is all in the record And know exactly what you need And what you're going to get And if you look at that You will see This was done textbook In terms of what the FMLA requires Using exactly the forms The Department of Labor recommends The doctor certified the disability As going to August 10th of 2011 And that's what they then followed up on And that's the limit Under FMLA of 12 weeks, right? Correct So where did the four to six month Time frame come? You're saying there's no document Requesting four to six months? There is no document Requesting four to six months Mr. Judge testified that His doctor told him at some point in time It would be four to six months And he contends that he told that to somebody Maybe Ms. Phillips, it's unclear He told that to somebody Maybe it was to the long-term disability carrier There is no documentation to support it And there was no witness From either the disability carrier Or LFI who heard it But what they did have Was the process whereby You obtain these leaves And that one, which has the doctor certification Says August 10th Which is why you get the follow-up call On August 9th when it's ending Where she says, tell me how you're doing And that's where he says I need another four to six weeks And she does exactly what I think the ADA would ask Which was to say, we can accommodate that We'll give you another four to six weeks The problem in this case occurred Because at the end of that four to six week period On September 16th, he didn't communicate And so when she called and left him a voicemail I always wonder, say he had answered the phone How this might have gone differently But left him a voicemail He didn't call, he didn't return her call He didn't send her a note He simply faxed in this doctor's note That as Judge Maloney found And as you can see for yourself Doesn't contain a request for an extension of leave Doesn't say he's continuing to receive treatment Doesn't indicate when he might be better Or if he will ever be better Well, check me My notes show that there was a 915 document That said that Mr. Judge could probably return to work Without restrictions in mid-November 11th I'm sorry, Your Honor That's all I have to say Okay, there is no such thing You don't see such thing There's no such document that I would Anywhere in the record Okay So the need to maintain staffing levels I don't really Is that all that was offered As a reason for declining To continue the indefinite leave? Yes, basically The woodshop has about 10 to 12 employees Losing an employee for an indefinite period of time In a shop that small is a problem LFI has 300 employees, I get that But he worked in the woodshop So you can carry that for a period of time But eventually you have to staff it And what you're trying to tell your replacement worker Is I don't know how long we can employ you Because he may be coming back At some point that's no longer reasonable Now, FMLA says 12 weeks I get that under the Americans with Disabilities Act That's not the final number Now we get into what's reasonable In the interactive process He tells them 6 more weeks And they give it to them So he's had a total of 21 weeks But the problem is At that point in time The only information they have Is that he has this restriction That appears to be unlimited in duration And that precludes him from doing the job And they hear nothing more That's the information that they have Upon which to make a decision And so After they tell him in the 26th He's being administratively terminated Whatever that is, I don't really Is that That's pretty significant Because when you're administrative terminated You're eligible for rehire So if on November 15 When he says he was released He had come back to LFI And said, I'm better He would have been eligible to be rehired He didn't He filed a lawsuit So you never heard from him Never heard from him again Except when we received the complaint Even when the lawsuit was filed Is that discussed? When he files the lawsuit Say, hey Did we talk about a return? I honestly don't remember Whether we did It obviously didn't happen But I don't remember if we talked about it or not This is a $10 an hour Manual labor job Correct Yep Yep If I sum up I think I've summed up as much as I can Does the court have any questions? Well, one question that I had There was an FMLA retaliation claim And What was What was the asserted Legitimate non-discriminatory reason For the termination? That he was unable to return to work They gave him the additional six weeks He was still unable to return to work The doctor's slip didn't indicate What the duration was When he'd be able to come back to work So at that point They concluded it was indefinite And that's when they submitted The administrative termination Thank you I'd like to clarify A couple of the points Raised by the judges During the questioning Judge Cook, you raised an issue of You thought there was some document It's not a document I This is the way I write my notes It's The doc As in doctor Okay Said that he probably could return to work On Somehow on On 9 9-15 The doctor said he could probably return to work In mid-November Yes And that is in the Where did that come from? From the doctor's report The doctor's report Which was sent This is in the faxed report? The doctor's report Of the meeting When did the employer see the report To which you refer? They did not see the report All right What happened was Mr. Judge went to his doctor On the 15th September 15th Okay His doctor told him at that point Consistent with what's in the doctor's notes That he could probably return Four to six weeks If there's no setbacks Or whatever the language was If there's no setbacks And are you continuing therapy At that point Is Mr. Judge Yes Okay And the But the employer Is there somewhere in the record Where the employer is Given that information? Yes Is that what is said to be From the phone conversation? Yes On September 26th There's the phone conversation After Mr. Judge is Like I said Blindsided and told Since you didn't give us a date certain We're administering Is this a certain date anyway? I mean It's You might Again You might be able to return to work You might And you're still continuing therapy Just depending on how it goes? Yes The case law doesn't indicate That date certain Has to be literally That particular day Because No doctor can ever say That someone Is not going to have any setbacks Or whatever They give you a general date That you He That reasonable medical Opinion would Seem to indicate He could return And that's what Mr. Judge indicated To Ms. Phillips In the September 26th Phone call He says My doctor says I can return In Four to six weeks And do well So There My understanding And please Correct me Was that there was A voicemail Left by Phillips On what day? On September 26th September 26th I thought there was A fax That your client made Of a doctor's report When was that made? I'm thinking It was an email But it could have been A voicemail I'm a little confused At that But that was On the September 26th In response To that Which I believe Was a request For what are Your restrictions Mr. Judge I believe faxed And I think That's what you're getting His Restrictions Which are The 20 pound Weight limitation And it's on A doctor's form Yes What day Is that sent? That's sent On the 26th Before or after He's terminated Well Before the Subsequent conversation That also occurred On the 26th In which She indicated You're being Administratively terminated Because he didn't Give us a date certain We have to fill So your position Is that on the 26th of September First There's a voicemail From Phillips Secondly In response To the voicemail Your client Faxes the Doctor's report Saying You can probably Go back November 15th And then third No No I don't want to I don't want to Misstate the record What he faxed Back was The restrictions Which is what Mr. Judge I believe Was responding to A request for The restrictions Then And is it true That And I'm going to Let you stay with Judge Moore But is it true Fill this in That those restrictions Were the same as the Post surgery restrictions No They were different Right That's okay Finish with Judge Moore Okay They were new Restrictions Yes And then That fax Did not include Any kind of Return to work Notation at all Right He was responding To the exact request Which is What are your Restrictions So then There was a Subsequent I guess I shouldn't say Subsequent Because there was No conversation It was just Communication But then There was a Conversation Later on the 26th In which She indicated You're being Administratively terminated For not giving us A date certain And then We need to Fulfill Staffing levels Or whatever And then Mr. Judge says Hey You know I met with my doctor He says I could return By mid-November You know Everything's going well My arm's getting stronger I'm doing physical therapy  By mid-November And I don't think You know The court The court should have Applied such a rigid Analysis Of the Interaction Between the Patients It would have been A much more Effective process When You know They hadn't even Written the termination Letter at that point They got the information They needed This was not An indefinite leave He was coming back He had a bicep injury He didn't have something That was likely To hold him out   That's my position I hope I've answered Some of the factual questions Thank you both For your argument The case will be submitted And we'll be back Next time Thank you Thank you    Thank you Thank you Thank you Thank you